## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WILLIAM KISSINGER,** | ) | **Civil Action No. 17-cv-11** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Judge DeGravelles** |
| | ) | **Magistrate Judge Wilder-Doomes** |
| **JAMES LEBLANC, BURL CAIN,** | ) | |
| **DARRYL VANNOY, SETH SMITH,** | ) | |
| **ROBERT TANNER, TIM HOOPER,** | ) | |
| **GREG MCKEY, STEPHEN** | ) | |
| **WAGUESPACK, MICHAEL VAUGHN** | ) | |
| **STEWART HAWKINS, SHELIA** | ) | |
| **ROBINSON, PHYLLIS WRIGHT,** | ) | |
| **BECKY HILL, BRANDY LANDRY,** | ) | |
| **GREGORY POLOZOLA, WALTER** | ) | |
| **JARRELL, JIM TILLMAN, in their** | ) | |
| **official and individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1.      Plaintiff William Kissinger is incarcerated in the custody of the Louisiana Department of Public Safety and Corrections ("DPSC").  He has lived most of the last 27 years at Louisiana State Penitentiary at Angola ("Angola").

2.      Over the course of his incarceration Mr. Kissinger worked hard and built a successful, productive life at Angola. He graduated from virtually every self-help program available at Angola, including substance abuse and anger management classes.  He has received dozens of certificates and diplomas.  He is a certified HIV peer-to-peer counselor.  He taught leadership and management for Toastmasters, serving as Secretary of the Angola chapter and

achieving the status of "advanced Toastmaster."  He was president of the Vietnam Veterans of America chapter and received national and local accolades for his work. He was recruited by the Vietnam Veterans of America to be featured in a video called "The Power of Choice."  That video was distributed nationally and is used as a tool in substance abuse and veterans' courts. Mr. Kissinger worked as an inmate counsel and as an "orderly" on the Angola campus. He learned woodworking and created art that was sold to the public and to Angola staff.  He achieved the status of "Class A Trusty" and was trusted to work in the St. Francisville community at Little League events and at local veterans' events.  Mr. Kissinger is widely regarded as a positive leader at Angola by both prisoners and staff.

3.      In 2015 the Baton Rouge Advocate wrote a series of articles chronicling corruption and nepotism within the Louisiana Department of Corrections. These stories ultimately resulted in the resignation of longtime Angola Warden Burl Cain, and in the investigation of many high ranking Department officials and employees.

4.      From December 2015 until February 2016 Mr. Kissinger communicated with a newspaper reporter for the Baton Rouge Advocate about the culture, corruption and graft at Angola.

5.      In retaliation for communicating with the press Mr. Kissinger was taken from his cell in the middle of the night. He was transported to a different DPSC facility where his belongings were seized and disposed of.

6.      Mr. Kissinger was placed in solitary confinement. He was only allowed out of the isolation cell for 15 minutes per day. He was not allowed any reading material. He was not afforded even a toothbrush; he brushed his teeth with his finger and salt.  He was held in these

solitary confinement conditions for 18 days and ultimately served 126 days in punitive segregation.

7.    Mr. Kissinger was subjected to the most severe and punitive treatment accorded by the Department to its prisoners. His offense was communicating to the outside world about the dynastic culture of greed and corruption permeating one of the largest state departments.

8.    This retaliatory conduct by the Defendants has been personally devastating to Mr. Kissinger.  It also is unconstitutional and gives rise to the instant action.

## JURISDICTION

9.    This cause of action arises under the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

10.    This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

## VENUE

11.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim[s] occurred" in this district.

## PARTIES

12.    Plaintiff William Kissinger is a person incarcerated in the custody of the Louisiana DPSC. He is presently housed at Elayn Hunt Correctional Center in St. Gabriel, Louisiana. The Defendants retaliated against Mr. Kissinger in response to the exercise of his First Amendment rights, and denied him due process of law, as more fully articulated *infra*.

13.    Defendant James LeBlanc is the appointed Secretary of the Department of Public Safety and Corrections for the State of Louisiana.  He has overall responsibility for the policies,

procedures, operations and supervision of the DPSC, its employees, agents, assigns and correctional facilities, including the Louisiana State Penitentiary at Angola and Elayn Hunt Correctional Center. Secretary LeBlanc is the final policymaker and decision maker for the DPSC. He is ultimately responsible for establishing DPSC policies pertaining to freedom of speech, the ability of prisoners to communicate with members of the media, retaliation against prisoners for speech and due process afforded to prisoners, *inter alia*.   Defendant LeBlanc denied Mr. Kissinger's disciplinary appeal as well as his administrative remedy procedure grievance, issuing substantive decisions upholding Kissinger's discipline.  He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. Thus, Defendant LeBlanc is an active participant in the acts complained of herein, both via personal involvement and in his capacity as policymaker. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of full age of majority of the Middle District of Louisiana.

14.     Defendant Burl Cain is the former Warden at Louisiana State Penitentiary at Angola.  He was an employee of the Department of Public Safety and Corrections at the salient time period in this litigation.  Although he stepped down as Warden of LSP in December 2015, Cain was still living on LSP grounds, remained employed by LSP and continued to act under color of law.  Cain retained influence over the policies and procedures of DPSC and the actions of DPSC staff with regard to Plaintiff Kissinger.  To the extent that he remains employed or acting under color of law through the DPSC he is sued in his official capacity for injunctive relief.  He is sued in his individual capacity for damages.  He is a resident of full age of majority of the Middle District of Louisiana.

15.     Defendant Darryl Vannoy is the current Warden at Louisiana State Penitentiary at Angola, acting under the direction and supervision of Defendant LeBlanc. He has responsibility for the policies, procedures, and operations of Angola, its employees, agents and assigns, and is also responsible for implementing policies promulgated by Defendant LeBlanc. Defendant Vannoy was a long time subordinate and friend of Defendant Cain.  He was Warden at the time that Plaintiff Kissinger was removed from his housing location at Angola and transported to EHCC in retaliation for exercise of his First Amendment rights.  Kissinger is informed that he cannot return to LSP until there is an administration change, which includes Defendant Vannoy. Vannoy had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it.  He is sued in his official capacity for injunctive relief and in his individual capacity for damages.  He is a resident of full age of majority of the Middle District of Louisiana.

16.     Defendant Seth Smith is a current employee of the Department of Public Safety and Corrections, believed to be the Chief of Operations, acting under the direction and supervision of Defendant LeBlanc.  He also is the son-in-law of Defendant and former Angola Warden Burl Cain.  Defendant Smith physically ordered the transfer of Plaintiff Kissinger from Angola to EHCC.  Upon information and belief, he also was responsible for ordering the disciplinary investigation into Plaintiff Kissinger.  Defendant Smith has modified salient DPSC policies since Plaintiff Kissinger's transfer.  He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. Thus, Defendant Smith was involved in the unlawful retaliation complained of herein both personally and as a final decision maker for the DPSC. He is sued in his official capacity for injunctive

relief and in his individual capacity for damages. He is a resident of full age of majority of the Middle District of Louisiana.

17.    Defendant Warden Robert Tanner is the former Warden at Elayn Hunt Correctional Center, acting under the direction and supervision of Defendant LeBlanc. He was the Warden of EHCC at the time Mr. Kissinger was transferred there. He is the current regional warden for DPSC and is the current warden at Rayburn Correctional Center. As Warden at EHCC he had responsibility for the policies, procedures, and operations of the EHCC, its employees, agents and assigns, and was also responsible for implementing policies promulgated by Defendant LeBlanc. He remains responsible for such as a DPSC regional warden. Defendant Tanner was a final decision maker with regard to Mr. Kissinger's disciplinary sentence and his punitive housing classification. As Warden and final policymaker at EHCC, Tanner was responsible for the conditions of confinement of Mr. Kissinger, the process afforded him at EHCC and the continued retaliation against him. He personally and through direction to his designees and staff was responsible for the harm to Mr. Kissinger, including rejection of Kissinger's disciplinary appeal as too lengthy, and ultimate supervision of both the disciplinary board and the cellblock review board. He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of full age of majority of the Middle District of Louisiana.

18.    Defendant Warden Tim Hooper is the current head Warden at EHCC, and previously was an assistant Warden at EHCC, acting under direction and supervision of Defendants LeBlanc and Tanner. He has now assumed all responsibilities previously held by Defendant Tanner. Formerly he had responsibility for some policies, procedures and operations

of EHCC, including specifically those affecting Mr. Kissinger.  He and Defendant Warden Tanner rejected Mr. Kissinger's appeal of his disciplinary conviction as "too lengthy" and ultimately denied it on the merits.  Defendant Hooper also was responsible for the decision to deny Mr. Kissinger's housing review, personally implementing continued restrictive housing for Mr. Kissinger.  Defendant Hooper also personally denied Mr. Kissinger's repeated requests for a copy of the investigation report into the disciplinary charges against him.  He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it.  He personally and through direction to his designees and staff was responsible for the harm to Mr. Kissinger.  He is sued in his official capacity for injunctive relief and in his individual capacity for damages.  He is a resident of full age of majority of the Middle District of Louisiana.

19.    Defendant Warden Greg McKey is an assistant Warden at Elayn Hunt Correctional Center acting under direction and supervision of Defendants LeBlanc and Tanner. He has responsibility for some policies, procedures and operations of EHCC, including specifically those affecting Mr. Kissinger.  He administratively denied and overrode the decision of the cellblock review board to return Plaintiff Kissinger to medium custody classification, thereby personally perpetuating the ongoing retaliation against Kissinger for his communication with the press.  He personally received Mr. Kissinger at EHCC and placed him in the Dungeon with instructions that he not be given a cellmate.  He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it.  He thus both personally and through direction to his designees and staff is responsible for the harm to Mr. Kissinger.  He is sued in his official capacity for injunctive relief

and in his individual capacity for damages. He is a resident of full age of majority of the Middle District of Louisiana.

20.    Defendant Stephen Waguespack is employee, agent and assign of the Louisiana Department of Public Safety and Corrections, acting both of his own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper as a classification manager at EHCC. Defendant Waguespack was responsible for the initial intake and screening of Mr. Kissinger upon arrival at EHCC, for seizure of his property and for classification decisions throughout Kissinger's incarceration at EHCC. Defendant Waguespack was aware that there was inadequate justification for placing Mr. Kissinger on disciplinary lockdown and that there was inadequate lawful support to justify Kissinger's heightened security classification. Defendant Waguespack personally imposed the retaliatory punishment in violation of Kissinger's First and Fourteenth Amendment rights. He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

21.    Defendant Michael Vaughn is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections, acting both of his own volition and under direction and supervision of Defendants LeBlanc and Smith. He is the individual assigned to investigate Mr. Kissinger's alleged disciplinary violations. He personally is responsible for the ongoing retaliation against Plaintiff Kissinger. He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of full age of majority of the Middle District of Louisiana.

22.    Defendant Col. Stewart Hawkins is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections, acting both of his own volition and under direction and supervision of Defendants LeBlanc and Smith.  He authored the investigative report into the alleged disciplinary violations of Mr. Kissinger and is personally responsible for the ongoing retaliation against Plaintiff Kissinger.  He also added additional disciplinary violations onto Kissinger's initial charges.  He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. He is sued in his official capacity for injunctive relief and in his individual capacity for damages.  He is a resident of full age of majority of the Middle District of Louisiana.

23.    Defendant Major Shelia Robinson is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections, acting both of her own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper.  She is the chairperson and a member the disciplinary board that denied Kissinger's motions for assistance to defend himself and found him guilty of disciplinary infractions stemming from his exercise of free speech and in violation of his right to due process of law.  Defendant Robinson personally imposed the retaliatory punishment in violation of Kissinger's First and Fourteenth Amendment rights.  She had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but she chose to impose and maintain it.  She is sued in her official capacity for injunctive relief and in her individual capacity for damages.  She is a resident of the full age of majority of the Middle District of Louisiana.

24.    Defendant Phyllis Wright is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections, acting both of her own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper.  Defendant

Wright is a member of the disciplinary board that denied Kissinger's motions for assistance to defend himself and found him guilty of disciplinary infractions stemming from his exercise of free speech and in violation of his right to due process of the laws. Defendant Wright personally imposed the retaliatory punishment in violation of Kissinger's First and Fourteenth Amendment rights. She had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but she chose to impose and maintain it. She is sued in her official capacity for injunctive relief and in her individual capacity for damages. She is a resident of the full age of majority of the Middle District of Louisiana.

25.    Defendant Becky Hill is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of her own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper. She is a member of the disciplinary board that denied Kissinger's motions for assistance to defend himself and found him guilty of disciplinary infractions stemming from his exercise of free speech and in violation of his right to due process of the laws. Defendant Hill personally imposed the retaliatory punishment in violation of Kissinger's First and Fourteenth Amendment rights. She had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but she chose to impose and maintain it. She is sued in her official capacity for injunctive relief and in her individual capacity for damages. She is a resident of the full age of majority of the Middle District of Louisiana.

26.    Defendant Major Brandy Landry is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of her own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper. Defendant Landry is a member of the disciplinary board that denied Kissinger's motions for assistance to

10

defend himself and found him guilty of disciplinary infractions stemming from his exercise of free speech and in violation of his right to due process of the laws. Defendant Landry personally imposed the retaliatory punishment in violation of Kissinger's First and Fourteenth Amendment rights. She had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but she chose to impose and maintain it. She is sued in her official capacity for injunctive relief and in her individual capacity for damages. She is a resident of the full age of majority of the Middle District of Louisiana.

27.    Defendant Gregory Polozola is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of his own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper. Defendant Polozola is a member of the disciplinary board that denied Kissinger's motions for assistance to defend himself and found him guilty of disciplinary infractions stemming from his exercise of free speech and in violation of his right to due process of the laws. Defendant Robinson personally imposed the retaliatory punishment in violation of Kissinger's First and Fourteenth Amendment rights. He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

28.    Defendant Colonel Walter Jarrell is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of his own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper. Defendant Jarrell is a member of the Department's "Cellblock Review Board" at Elayn Hunt. That board determines when housing changes are appropriate. As a member of that Board Defendant

Jarrell personally imposed continued retaliatory punitive housing conditions on Plaintiff Kissinger stemming from his exercise of free speech and in violation of due process of the laws. He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

29.    Defendant Assistant Warden Jim Tillman is an employee, agent and assign of the Louisiana Department of Public Safety and Corrections acting both of his own volition and under direction and supervision of Defendants LeBlanc, Smith, Tanner and Hooper. Defendant Tillman is a member of the Department's Cellblock Review Board at Elayn Hunt Correctional Center. That board determined when housing changes are appropriate. As a member of that Board Defendant Tillman personally imposed continued retaliatory punitive housing conditions on Plaintiff Kissinger stemming from his exercise of free speech and in violation of due process of the laws. He had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. He is sued in his official capacity for injunctive relief and in his individual capacity for damages. He is a resident of the full age of majority of the Middle District of Louisiana.

## STATEMENT OF FACTS

Plaintiff Kissinger incorporates all facts previously stated and further avers as follows:

30.    In 1995 Plaintiff Kissinger was a whistleblower at Angola pertaining to the relabeling and sale of expired cans of food. Kissinger was retaliated against for his role in that investigation and ultimately successfully sued the DPSC, obtaining both injunctive relief and damages.

31.     In 2015 a reporter for the Baton Rouge Advocate named Maya Lau found Kissinger's 1995 whistleblower litigation and included it in a story she wrote pertaining to DPSC.  Lau also wrote Kissinger a letter and asked to be placed on his visitation list.

32.     Kissinger was anxious about contact with the press due to his very negative experience of retaliation by the LSP administration in the 1990s.

33.     Thus, Kissinger advised a DPSC staff member of the December 2015 letter from reporter Lau.  Kissinger was advised that per Assistant Warden Bruce Dodd he should "not worry about" communicating with Lau.

34.     Kissinger sent response to Lau through a friend using Angola's monitored e-mail system called J-Pay.  J-Pay functions as a prison email system.

35.     Kissinger requested that Lau set up a J-Pay account.

36.     Lau established a J-Pay account.  The two began to correspond via that account around December 28, 2015.  They corresponded regularly about various matters, including life at Angola, staff and corruption involving funds from the Angola rodeo.

37.     On February 1, 2016, Kissinger sent Lau a message indicating that he had a large amount of information he was delivering to her via letter soon.  He highlighted questions that she should be asking as part of the Baton Rouge Advocate's ongoing investigations of financial improprieties at Angola.  He also noted that he had additional information about financial improprieties that she would be interested in.

38.     On February 4, 2016, Kissinger was called to the exit area of Angola and advised that he was being written up for a violation of Rule 30-W ("General Prohibited Behaviors") of the DPSC Disciplinary Rules and Procedures for Adult Offenders ("DPSC Rules").  The only description provided was "Offender William Kissinger #77523 is being placed in Administrative

Segregation pending a thorough investigation by Major Michael Vaughn." The "report" is signed by Defendant Vaughn.

39.    Kissinger was given 15 minutes to pack up his belongings. He was forced to abandon personal items stored in his office such as writings, photographs, diplomas, certificates, records, files, compact discs and a compact disc player. He also was forced to leave his "hobby craft" items. "Hobby craft" refers to personal tools, supplies and materials prisoners purchase with their own money to use to work in the Angola hobby shop and create goods for sale. Angola policy would require the inventorying, packaging and securing of these valuable items but Warden Dupont instead instructed Kissinger to leave his hobby craft items in the possession of another prisoner.

40.    Mr. Kissinger was transported to Elayn Hunt Correctional Center ("EHCC").

41.    Upon arrival at EHCC all of the personal property Kissinger had managed to pack was confiscated. He was told that he would be allowed to retain one bag of personal possessions. Everything he could not fit into one bag was thrown away. He was required to dispose of much of his personal property, including a dozen personal shirts, dress shirts, a Bible, shoes and cds. These are all items Mr. Kissinger personally saved for and purchased over the course of his incarceration. He used the last $27.00 he had in his financial account to mail an expensive woodworking tool to a friend, to avoid throwing it away.

42.    All told, Mr. Kissinger lost most of his personal property, which he worked hard to purchase with his own money over the time he was in prison.

43.    Mr. Kissinger was placed in solitary confinement, called "the Dungeon" at Hunt.

44.    In the Dungeon, Kissinger had no access to any items. He has a degenerative spinal condition and was forced to sleep and sit on concrete, being provided a mattress only at

night.  He did not have bed sheets or any toiletry items.  He was not even afforded a toothbrush.
He was provided a wad of toilet paper every other day.  He was allowed out of his cell for fifteen
minutes per day and was shackled with hard restraints, resulting in cuts to his wrists.  The note
on his cell said "do not double" to ensure that he was not provided with a cellmate.  Having no
books, radio or other personal item whatsoever, Mr. Kissinger sat alone on the concrete in this
cell for weeks.

**The Disciplinary Process**

45.    On February 8, 2016 Kissinger was brought before a disciplinary board.  He filed
motions on his behalf requesting to face his accuser, call witnesses in his defense, have outside
counsel present, and be released from administrative segregation pending investigation. All
motions were denied by the Defendant disciplinary board members.

46.    On February 19, 2016, Kissinger again appeared before the Defendant
disciplinary board members.

47.    At this hearing after fifteen days of solitary confinement, Mr. Kissinger was
informed for the first time that DPSC has added three disciplinary charges against him: a Rule 3
Defiance charge, as well as Rule 30-H and 30-K violations.

48.    DPSC Rule 3 provides, in part:

>        Defiance: No offender shall curse, insult or threaten
> another person in any manner. This prohibited conduct includes
> abusive and insulting conversation, correspondence, phone calls or
> gestures by an offender. Further, no offender shall obstruct, resist,
> distract or attempt to elude staff in the performance of their duties.
> Nor shall an offender intimidate or attempt to intimidate staff or
> manipulate staff's actions.

49.    DPSC Rule 30-H prohibits "(b)ribing, influencing or coercing anyone to violate
institutional policies, procedures, rules or state and federal laws or to attempt to do so."

50.    DPSC Rule 30-K provides

(t)he communication of statements or information known to be malicious, frivolous, false and/or inflammatory, the purpose of which is reasonably intended to harm, embarrass, or intimidate an employee, visitor, guest, offender or their families may be subject to all Schedule B penalties except for forfeiture of good time and/or loss of incentive wages.

51.    DPSC Rule 30-W provides "any behavior not specifically enumerated herein that may impair or threaten the security or stability of the unit or well-being of an employee, visitor, guest, offender or their families may still be the subject of a Disciplinary Report…."

52.    The Defendant board members informed Mr. Kissinger that the Board was rejecting the 30-H and 30-K as unsupported. However, the Defendant board members formally introduced the Rule 3 charge against Plaintiff Kissinger.

53.    Mr. Kissinger requested a copy of the investigation report pertaining to his write up for a Rule 3 violation.  That request was denied.  The investigation report also was not read into the record.  Mr. Kissinger had no way to defend himself against the charges, being wholly unaware of the factual or investigative support relied upon.

54.    Mr. Kissinger was found guilty by Defendant board members of violating Rules 3 and 30-W.  He was sentenced to ten days in isolation.

55.    Because he had already served 14 days in isolation, Kissinger should have been immediately released from solitary confinement.  Instead Kissinger was left in isolation for an additional three days.  All told, he was held in solitary confinement in the Dungeon with no access to any materials or personal items whatsoever for a total of 18 days, until February 22, 2016.

56.    On February 22, 2016, Mr. Kissinger was moved to "the working cellblock" which is another disciplinary unit at Elayn Hunt, also called "Beaver 4-A."  In this unit Mr.

Kissinger had restricted access to personal items.  He had a cellmate but still was only allowed out of his cell for work and to shower.

57.    Mr. Kissinger appealed the disciplinary board's findings to Defendant Warden Tanner.  That appeal was held under review by Defendants Tanner and Hooper for twenty days, before being rejected and returned to Kissinger as "too lengthy" on March 17, 2016.

58.    Mr. Kissinger immediately re-drafted and submitted his appeal on March 21, 2016, the same day he received the decision.  That appeal was rejected by Defendants Hooper and Tanner on April 19, 2016, stating "review of the record determined that Appellant obstructed officers in the performance of their duties, that his behavior impaired the security and stability of the unit, and that it is inevident that the charge and the sentence were motivated by retaliatory purposes."

59.    Mr. Kissinger immediately filed an appeal to Defendant Secretary LeBlanc.  That appeal was rejected.

60.    Throughout the administrative process, the appeals and to the present Mr. Kissinger has never been provided with any documentation pertaining to the alleged Rule 3 violation.

**The Housing Review Process**

61.    Because Mr. Kissinger continued to be housed in maximum custody, the "Cellblock Review Board" conducted periodic reviews of his security and classification status. The periodic reviews are to assess whether release to a less restrictive housing assignment is appropriate.  This review is conducted approximately every sixty days.

62.    Kissinger's first review was in April.  At that time, the Cellblock Review Board recommended that he be reclassified back to medium security.  That recommendation was

rejected by the Defendant Warden Tanner and Assistant Wardens. Mr. Kissinger was advised "(y)our initial cellblock review Board recommending you to Medium Custody was Administratively denied by the Assistant Warden. You can file an appeal to Deputy Warden Hooper."

63.     After the passage of an additional sixty days, on June 9 the Cellblock Review Board again recommended that he be released to medium security housing. That recommendation was accepted by the Defendants.

64.     All told, Kissinger lived in punitive restricted housing until June 10, 2016, for over four months.

65.     Kissinger has been in the custody of the DPSC for 27 years. In that time he has had an unusually low number of disciplinary incidents. He has an exemplary conduct record and has maintained his Class-A Trusty status for all but six months of the last sixteen (16) years.

66.     Defendants took the aforementioned actions in retaliation against Mr. Kissinger for his exercise of free speech, and did so in violation of his rights. The use of solitary confinement and maximum security classification for communication with the press and the public exceeds the punishment sanctioned for other more serious rule violations.

67.     This retaliation and denial of due process has caused substantial harm to Plaintiff Kissinger. In addition to the physical injury to his person, Plaintiff Kissinger has suffered deprivations, including:

        i.   He sustained a change in classification from Class A Trusty to maximum security, and the loss of all attendant rights and privileges;

       ii.   He lost his employment at Angola and in the St. Francisville community;

    iii.   He was subjected to prolonged housing in restrictive confinement including solitary, and attendant loss of rights and privileges;

    iv.   He remains subjected to geographical transfer away from friends and support network;

    v.   He lost hundreds of dollars of personal property allowed at Angola but disallowed at EHCC, forcing Mr. Kissinger to throw the items away;

    vi.   He lost approximately $2500 in hobby craft tools and materials which LSP refused to allow Plaintiff to inventory, pack or store;

    vii.   He has been a financial burden on friends and family;

    viii.   He has lost opportunity to be considered for a pardon, because one must be free of disciplinary infractions for two years to be considered for pardon. Prior to this incident Mr. Kissinger was free of disciplinary infractions for more than eleven (11) years.

68.    The Defendants are on notice that retaliation for exercise of First Amendment rights is unconstitutional.

## CLAIMS FOR RELIEF

### First Claim

### First Amendment Violation: Retaliation for the Exercise of Free Speech

Defendants violated the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution by retaliating against him for his communication with the public and the press.

**Second Claim**

**Fourteenth Amendment Violations: Deprivation of Due Process of Law**

Defendants violated Mr. Kissinger's right to due process through their handling of the disciplinary charges against him, in violation of the Fourteenth Amendment to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays that this Honorable Court grant the following relief:

a.        Declare that the acts and omissions of the Defendants violate Plaintiff's constitutional rights and federal law;

b.        Enter an injunction requiring the Defendants, their agents, subordinates, employees and all others acting in concert with them to cease their unconstitutional and unlawful practices and to remedy their violations of the Constitution and the laws;

c.        Enter an injunction requiring Defendants to restore to Plaintiff all rights and privileges he enjoyed prior to the retaliation;

d.        Award to the Plaintiff nominal, compensatory and punitive damages;

e.        Award to the Plaintiff reasonable costs and attorney's fees; and

f.        Grant the Plaintiff such other relief as the Court may deem just and proper.


        RESPECTFULLY SUBMITTED, this the 25th day of January, 2017,


                        *Katie M. Schwartzmann*
                        Katie M. Schwartzmann, La. Bar No. 30295
                        Roderick & Solange MacArthur Justice Center
                        4400 S. Carrollton Ave.
                        New Orleans, La 70119
                        (504) 620-2259
                        Katie.schwartzmann@macarthurjustice.org