UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| WILLIAM KISSINGER | * | CIVIL ACTION |
| --- | --- | --- |
| | * | |
| | * | NO. 17-0011-JWD-EWD |
| VERSUS | * | |
| | * | JUDGE JOHN W. deGRAVELLES |
| | * | |
| JAMES M. LEBLANC, ET AL | * | MAGISTRATE JUDGE |
| | * | ERIN WILDER-DOOMES |

*************************************************************************

## MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS

I. **FACTUAL BACKGROUND**

William Kissinger ("Plaintiff") is an inmate currently incarcerated at Elayn Hunt Correctional Center ("Hunt"). He brings the instant action pursuant to 42 U.S.C. §1983, alleging that the defendants violated his rights under the United States Constitution.

Plaintiff alleges that in 2015, while incarcerated at Louisiana State Penitentiary ("LSP"), he was contacted by Maya Lau, a reporter with the Baton Rouge Advocate.[1] Plaintiff alleges that he began communicating with Ms. Lau via JPay, a monitored e-mail system, through a friend's account.[2] In late December 2015, Plaintiff asserts that Ms. Lau established a JPay account and the two corresponded about various matters at Angola.[3] Plaintiff alleges that on February 1, 2016, he sent Ms. Lau a message regarding a large amount of information he was going to send her via letter.[4]

On February 4, 2016, Plaintiff alleges that he was called to the exit area of Angola and advised that he was being written up for a violation of Rule 30-W, general prohibited behaviors.[5]

---

[1] R. Doc. 1, ¶4.
[2] *Id.*, ¶34.
[3] *Id.*
[4] *Id.*, ¶37.
[5] *Id.*, ¶38.

1

He alleges that he was forced to abandon numerous personal items, including his "hobbycraft" items.[6] According to Plaintiff, he was transported to Hunt, where he claims most of his property restricted, resulting in him having to expend funds to mail certain items to a friend and some of the items being disposed of.[7]

Upon his arrival to Hunt, Plaintiff claims that he was placed in solitary confinement, where he had access to few items. Plaintiff claims that he was shackled with hard restraints, resulting in cuts to his wrists.[8] Plaintiff also alleges that, during this time, he was not provided with a cellmate.[9]

According to Plaintiff, he was brought before a disciplinary board at Hunt on February 8, 2016.[10] At this time, Plaintiff alleges that he was denied several motions by the disciplinary board members.[11] Plaintiff states that he returned before the Board on February 19, 2016, where he learned that he would be facing an additional three (3) charges: a rule 3 defiance charge, a rule 30-H charge, and a rule 30-K charge.[12] During this hearing, Plaintiff claims that the rule 30-H and 30-K charges were dismissed, but that he was found guilty of violating the rule 3 and rule 30-W charges.[13] Plaintiff asserts that he was sentenced to ten (10) days in isolation.[14]

Plaintiff avers that, despite the fact that he has already served fourteen (14) days in isolation, he was not released until three (3) days later, after a total of eighteen (18) days.[15] Plaintiff states that on February 22, 2016, he was moved to the "working cellblock," another

---

[6] *Id.*, ¶39.
[7] *Id.*, ¶40-¶41.
[8] *Id.*, ¶44.
[9] *Id.*
[10] *Id.*, ¶45.
[11] *Id.*
[12] *Id.*, ¶46.
[13] *Id.*, ¶52 & ¶54.
[14] *Id.*, ¶54.
[15] *Id.*, ¶55.

disciplinary unit at Elayn Hunt.[16] During this time, Plaintiff claims he was allowed a cellmate, but was only allowed out of his cell for work and to shower.[17]

Plaintiff asserts that he appealed the disciplinary board's findings to Defendant Tanner and Defendant Hooper, which was dismissed as "too lengthy" on March 17, 2016.[18] Plaintiff claims he immediately re-drafted and submitted his appeal on March 21, 2016.[19] Plaintiff avers that his appeal was again denied on April 19, 2016.[20] Plaintiff states he subsequently filed another disciplinary appeal to defendant LeBlanc, which was also rejected.[21]

During his time in the working cellblock, Plaintiff states that the "Cellblock Review Board" conducted periodic reviews of his security and classification status.[22] Plaintiff asserts that his first review was in April.[23] Plaintiff alleges that the review board recommended that he be reclassified to minimum security; however, Plaintiff alleges that the recommendation was rejected by defendant Tanner and assistant wardens.[24] In June 2016, Plaintiff states that the review board again recommended that he be reclassified to medium security, a recommendation which was accepted.[25] Plaintiff states that he was released from the working cellblock on June 10, 2016, after serving over four (4) months in punitive restrictive housing.[26]

The appearing defendants now submit this *Partial Motion to Dismiss*.

---

[16] *Id.*, ¶56.
[17] *Id.*
[18] *Id.*, ¶57.
[19] *Id.*, ¶58.
[20] *Id.*
[21] *Id.*, ¶59.
[22] *Id.*, ¶61.
[23] *Id.*, ¶62.
[24] *Id.*
[25] *Id.*, ¶63.
[26] *Id.*, ¶64.

II. **LAW AND ANALYSIS**

    **A. MOTION TO DISMISS – STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."[27] These factual allegations must raise a right to relief above the speculative level.[28] The Supreme Court has explained "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"[31]

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[32] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[33] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[34] "Nor

---

[27] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555(2007).
[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[30] *Id.*
[31] *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).
[32] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).
[33] *Id.*
[34] *Id.*

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[35]

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[36] The Supreme Court, quoting *Twombly*, acknowledged that a plaintiff cannot open the door to discovery by pleading only conclusions:

> Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as factual allegation. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.[37]

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[38]

## B. QUALIFIED IMMUNITY

For the reasons further discussed below, the defendants are entitled to qualified immunity from the claims asserted against them. Plaintiff is unable to establish that the defendants' conduct was objectively unreasonable in light of clearly established law. Plaintiff's claims asserted against the defendants in their individual capacities should be dismissed with prejudice.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[39] As enunciated in *Saucier v. Katz*, the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to Plaintiff, the defendants' conduct violated Plaintiff's constitutional

---

[35] *Id.*
[36] *Id.*
[37] *Id.* at 678-679.
[38] *Id.*
[39] *Huff v. Crites*, 473 Fed. Appx. 398, 399 (5th Cir. 2012).

5

rights.[40] Second, the district court looks to whether the rights allegedly violated were clearly established.[41] This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.[42] The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.[43]

The courts have traditionally used the two step method in determining whether a defendant is entitled to qualified immunity. However, the sequencing of the analysis has been left to the discretion of the district court judges to determine which of the two prongs should be analyzed first.[44]

### C. RETALIATION[45]

### APPLICABLE LAW

To prevail on a claim of retaliation, a prisoner must establish four elements: (1) invocation of a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) a retaliatory adverse act; and (4) that but for the retaliatory motive, the action complained of would not have occurred.[46] An inmate must allege more than his personal belief that he is the victim of retaliation.[47] To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must either produce direct evidence or motivation, or allege a chronology of events from which retaliation may be plausibly inferred.[48]

---

[40] *Saucier v. Katz,* 533 U.S. 194, 201 (2001).
[41] *Id.*
[42] *Id.*
[43] *Id.* at 202.
[44] *Pearson v. Callahan*, 555 U.S. 223, 232-233 (2009).
[45] At this stage, defendants do not seek dismissal of Plaintiff's retaliation claims against defendants Darrel Vannoy, Seth Smith, Stewart Hawkins, or Michael Vaughn.
[46] *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).
[47] *Jones*, 188 F.3d at 325; Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).
[48] *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Claims of retaliation are not favored, and the Courts carefully scrutinize such claims with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions.[49]

## ANALYSIS

### a) **Defendant James LeBlanc**

Plaintiff has failed to state a claim for retaliation against defendant Leblanc. Plaintiff alleges that defendant LeBlanc has "overall responsibility for the policies, procedures, operations, and supervision of the DPSC." Plaintiff also alleges that defendant LeBlanc "is the final policymaker and decision maker for the DPSC."

It is firmly established that individual liability under §1983 may not be predicated on the vicarious liability doctrine of *respondeat superior*.[50] Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.[51] Furthermore, in the case of governmental entities or municipalities, there must be an official policy which causes the constitutional violation.[52] Simply stating conclusory allegations of supervisory liability is insufficient.[53] Thus, to the extent that Plaintiff seeks damages against Secretary LeBlanc for the acts or omissions of other DOC officials, such claims fail; Plaintiff must allege facts that defendant LeBlanc was "personally involved" in the alleged retaliation.

---

[49] *Woods*, 60 F.3d at 1166.
[50] *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).
[51] *Alton*, 168 F.3d at 200; *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc);*Coleman v. Houston Independent School District*, 113 F.3d 528, 534 (5th Cir. 1997): *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 601 (5th Cir. 1988); *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 355 (5th Cir. 1987), overruled on other grounds, *Walton v. Alexander*, 44 F.3d 1297, 1303 n. 4 (5th Cir. 1995) (en banc); *Kline v. North Tex. State Univ.*, 782 F.2d 1229, 1235 (5th Cir. 1986); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).
[52] *Monell*, 436 U.S. at 692.
[53] *Alton*, 168 F.3d at 200; *Bennett*, 728 F.2d at 767 (5th Cir. 1984) (en banc).

Plaintiff alleges that defendant LeBlanc "denied Mr. Kissinger's disciplinary appeal as well as his administrative remedy procedure grievance, issuing substantive decisions upholding Kissinger's discipline," and states in a conclusory fashion that "he had the authority to not impose or maintain the retaliatory discipline against Mr. Kissinger but he chose to impose and maintain it. However, even taking these allegations as true, defendant LeBlanc was objectively reasonable in his actions, and is entitled to qualified immunity. It is a well settled point of law that a prisoner does not have a right in having disciplinary or administrative proceedings properly investigated, handled, or favorably resolved.[54] Therefore, in the light of clearly established law, defendant LeBlanc was objectively reasonable in denying Plaintiff's disciplinary appeal and administrative grievance.

Plaintiff's allegations against defendant LeBlanc does not support the conclusion that defendant LeBlanc personally retaliated against Plaintiff. Rather, the allegations show that defendant LeBlanc acted reasonably in denying Plaintiff's disciplinary appeal and administrative grievance. Plaintiff's retaliation claims against Secretary LeBlanc should be dismissed.

### b) Defendants Robert Tanner, Tim Hooper, and Greg McKey ("Warden Defendants")

Defendants first note that Plaintiff has made no allegations that these defendants participated in any decision to transfer Plaintiff from LSP to Hunt. Rather, Plaintiff's factual allegations revolve around the administrative decisions regarding Plaintiff's housing, his disciplinary conviction, and the procedures surrounding his disciplinary conviction and sentence.

As discussed above, Plaintiff's claims against these defendants fail to the extent that he seeks to hold them responsible for the actions of their subordinates. Additionally, Plaintiff's claims fail to establish the requisite retaliatory intent and causation on behalf of these defendants.

---

[54] *Mahogany v. Miller,* 252 Fed. App'x. 593, 595 (5th Cir. 2007).

Plaintiff relies almost exclusively on his personal and conclusory belief that any and all adverse decisions made at Hunt were based upon retaliatory intent of the defendants for activity that occurred while he was housed at LSP. But there are no allegations that the content of Plaintiff's communication involved these defendants, and there are no allegations to support Plaintiff's conclusion that these defendants had any reason to retaliate against Plaintiff for his communications with Ms. Lau. Additionally, Plaintiff does not suggest that these defendants were influenced in any way by LSP officials, or even that they had any involvement or participation in the decision to transfer Plaintiff or to institute disciplinary charges against him.

Additionally, these defendants are entitled to qualified immunity. Even taking the allegations of the Complaint as true, a reasonable prison official would be aware that his actions would violate clearly established law. Plaintiff's allegations regarding the Warden defendants suggest that they (1) denied his disciplinary appeal twice, (2) subjected him to a particular classification at Hunt, and (3) overrode the cellblock review board's recommendation to have him reclassified to medium security. As discussed in further detail below, Plaintiff did not have a right to his classification, his custody status, his housing assignment, or any investigation into his disciplinary appeal or his administrative remedy procedure. Thus, these defendants had no reason to suspect that they were acting objectively unreasonable in performing these actions, particularly considering Plaintiff's allegations that he (1) was transferred from LSP following a disciplinary write up and (2) actually received a disciplinary conviction for at least some of the charges against him. Additionally, this conclusion is further supported by Plaintiff's allegations that his disciplinary appeal was reviewed by the Wardens, who noted that "a review of the record determined that Appellant obstructed officers in the performance of their duties, that his behavior

impaired the security and stability of the unit, and that it is inevident that the charge and the sentence were motivated by retaliatory purposes."[55]

Plaintiff's retaliation claims against the Warden Defendants should be dismissed.

### c) **Defendant Stephen Waguespack**

Plaintiff's retaliation claims against defendant Waguespack also fail. Plaintiff alleges that defendant Waguespack was "responsible for the initial intake and screening of Mr. Kissinger upon arrival at EHCC, for seizure of his property and for classification decision throughout Kissinger's incarceration at EHCC." Particularly, Plaintiff alleges that Waguespack "was aware that there was inadequate justification for placing Mr. Kissinger on disciplinary lockdown and that there was inadequate lawful support to justify Kissinger's heightened security classification."

Plaintiff makes no allegations that defendant Waguespack had any involvement in the lawsuit other than completing Plaintiff's initial intake at Hunt. Plaintiff does not suggest that these defendants were influenced in any way by LSP officials, or that they had any involvement or participation in the decision to transfer Plaintiff or to institute disciplinary charges against him. Additionally, Plaintiff's allegations show that defendant Waguespack is entitled to qualified immunity. While Plaintiff alleges that Waguespack was aware of an "inadequate justification" for Plaintiff's placement on disciplinary lockdown and heightened security classification, Plaintiff also alleges that he received a disciplinary write up prior to his transfer to Hunt. Plaintiff also specifically alleges that the disciplinary report stated "William Kissinger #77523 is being placed in administrative segregation pending a thorough investigation by Major Michael Vaughn." Under these circumstances, a reasonable prison official would not be aware that a certain classification of an offender who has been issued a disciplinary report and who is under

---
[55] R. Doc. 1, ¶58.

investigation would violate clearly established law; this conclusion is further supported considering that an offender does not have an inherent constitutional right to any particular security classification, time-earning status, or custody level.[56]

Plaintiff's allegations fail to state a retaliation claim against defendant Waguespack. In addition to failing to sufficient facts to show that Waguespack acted with a retaliatory motive, Plaintiff has further failed to show that "but-for" such motive, the action complained of would not have occurred. Rather, Plaintiff's allegations show that Waguespack acted reasonably under the circumstances, given that Plaintiff had received a disciplinary write-up at hunt prior to his transfer. Plaintiff's retaliation claims against Waguespack should be dismissed.

### d) Defendants Shelia Robinson, Phyllis Wright, Becky Hill, Brandy Landry, Gregory Polozola ("Disciplinary Board Defendants")

The Disciplinary Board Defendants are also entitled to qualified immunity. Plaintiff alleges that on two separate occasions, he appeared before the Board. Plaintiff alleges that during the course of these hearings, two of the charges against him were dismissed, but that he was found guilty for violations of rule 30-W and rule 3.[57]

Plaintiff's allegations fall short of establishing retaliatory motive on the part of the disciplinary board defendants. Plaintiff does not suggest that these defendants were influenced in any way by LSP officials, or that they had any involvement or participation in the decision to transfer Plaintiff or to institute disciplinary charges against him.

Additionally, these defendants are entitled to qualified immunity. The Complaint establishes that Plaintiff was ultimately found guilty of rule infractions committed while at LSP. Plaintiff asserts no allegations to show that the disciplinary board defendants had any other involvement in the events set forth in Plaintiff's Complaint, or that they possessed a retaliatory

---

[56] *Hewitt v. Helms,* 459 U.S. 460, 468 (1983).
[57] R. Doc. 1, ¶45-¶54.

animus. Notwithstanding the alleged procedural defects in the disciplinary process, Plaintiff fails to sufficiently allege that but for the retaliatory intent of the disciplinary board members, he would not have been found guilty. As described above, Plaintiff alleges that he received disciplinary write ups, which ultimately brought him before the Board. Plaintiff's allegations, even if true, do not set forth facts to establish retaliation on the part of the disciplinary board. Thus, a reasonable prison official would, under these circumstances, not be aware that their actions would violate Plaintiff's constitutional rights.

Plaintiff's claims against these defendants should be dismissed.

### e) **Defendants Walter Jarrell and Jim Tillman ("Cellblock Review Board Defendants")**

Plaintiff has failed to allege a chronology of events that indicate that the Review Board Defendants retaliated against him. Plaintiff alleges that these defendants "personally imposed continued retaliatory punitive housing conditions on Plaintiff Kissinger." However, Plaintiff's allegations undermine this conclusion. Plaintiff specifically alleges that, on two separate occasions, these defendants recommended that Plaintiff be reclassified to medium security, a recommendation that Plaintiff alleges was not initially adopted. Additionally, Plaintiff alleges no facts that these defendants had any other interaction with Plaintiff, had any role in the adverse actions alleged, or otherwise took any adverse action against Plaintiff.

Plaintiff fails to establish retaliatory motive or causation in regard to these defendants. Plaintiff does not suggest that these defendants were influenced in any way by LSP officials, or that they had any involvement or participation in the decision to transfer Plaintiff or to institute disciplinary charges against him. In fact, Plaintiff specifically alleges that they took affirmative steps to reclassify him into a more favorable housing location.

These defendants are also entitled to qualified immunity. Plaintiff's allegations show that these defendants did not "impose or maintain retaliatory discipline." Given that, at most, defendants Jarrell and Tillman actively attempted to reclassify Plaintiff into a more favorable housing location, it is clear that a reasonable prison official in a similar position would not be aware that such action would violate Plaintiff's clearly established rights. There are no allegations that these defendants took any other action against Plaintiff, nor that these defendants actually imposed discipline on Plaintiff. Therefore, Plaintiff's retaliation claims against these defendants fail, and should be dismissed.

**D. DUE PROCESS**

Plaintiff asserts that "the defendants violated Mr. Kissinger's right to due process through their handling of the disciplinary charges against him, in violation of the Fourteenth Amendment." However, for the reasons described in further detail below, Plaintiff's due process claims fail as a matter of law.

APPLICABLE LAW

Before an individual is entitled to the protections of due process, a recognized liberty or property interest must be at stake.[58] In the prison context, due process mandates that an inmate be afforded minimum procedural protections during institutional disciplinary proceedings *if* the resulting punishment would "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[59] Ordinarily, an inmate has no recognized due process interest in his custodial classification.[60] Thus, the mere adjustment of an inmate's custodial classification does not implicate a liberty interest protected by the Due Process Clause.[61]

---

[58] *Bd. Of Regents v. Roth,* 408 U.S. 564, 569-70 (1972).
[59] *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Wolff v. McDonnell,* 418 U.S. 539 (1974)
[60] *Moody v. Baker,* 857 F.2d 256, 257-58 (5th Cir. 1988).
[61] *Neals v. Norwood,* 59 F.3d 530, 533.

13

Additionally, the loss of privileges as punishment "are in fact merely changes in the conditions of his confinement and do not implicate due process concerns."[62] Additionally, the loss or restriction or loss of most prison privileges do not implicate due process concerns.[63]

Solitary confinement is typically viewed as an ordinary, expected, and permissible incident of prison life.[64] However, solitary confinement can be used in a way that "imposes atypical and significant hardship" such that it entitles an inmate to the protection of due process.[65] Recently, the Fifth Circuit has stated that both the "severity of the restrictive conditions and their duration are key factors" in determining whether an inmate has a liberty interest in his custodial classification.[66] "In essence, courts employ a sliding scale, taking into account how bad the conditions are *and* how long they last."[67] Indeed, "truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be."[68]

## ANALYSIS

Initially, defendants note that no allegations support a finding that any defendants other than the Disciplinary Board Defendants had any participation in Plaintiff's disciplinary conviction. Thus, as a matter of law, Plaintiff's claims fail against the majority of the named defendants in this lawsuit.

The deprivations alleged in Plaintiff's Complaint do not rise to the level of an "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." In

---

[62] *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997).
[63] *See Lewis v. Dretke*, No. 02-40956, 2002 U.S. App. LEXIS 28227, 2002 WL 31845293, at *1 (5th Cir. 2002) (finding restrictions on commissary, telephone, recreation, and library privileges as well as attendance at religious services, resulting from allegedly false disciplinary charges does not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (holding inmate has no constitutional right to visitation privileges); *Bulger v. United States*, 65 F.3d 48, 50 (5th Cir.1995) (finding inmate's loss of prison job did not implicate a liberty interest even though the inmate lost the ability to automatically accrue good-time credits).
[64] *See Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).
[65] *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin*, 515 U.S. at 484).
[66] *Bailey v. Fisher,* 647 Fed. Appx. 472, 476 (5th Cir. 2016)(citing *Wilkerson v. Goodwin,* 774 F.3d 845, 855 (5th Cir. 2014).
[67] *Id* (emphasis original).
[68] *Id.*

particular, Plaintiff has no cognizable liberty interest in his trusty status,[69] his work assignment,[70] his custodial classification, or even in what prison he may be incarcerated.[71] Plaintiff has no protected liberty interest in these privileges. Additionally, Plaintiff alleges that he was sentenced to ten (10) days in isolation, and was ultimately housed in isolation for a total of eighteen (18) days. Plaintiff further alleges following his transfer from isolation, that he was housed in a "punitive" working cellblock for over four (4) months before being reclassified to medium security. Even accepting the restrictive conditions of such housing as true, the minimal duration does not approach the cases in which the Fifth Circuit has found isolation to create an atypical and significant hardship.[72] Finally, Plaintiff's claim that he was "denied the opportunity to be considered for a pardon" does not implicate due process concerns, as the granting of a pardon is a discretionary act of the Governor of Louisiana, absent a showing that a prisoner is a first time felon who has completed his sentence.[73]

Plaintiff does not allege deprivations that impact the length or duration of his confinement, nor does he alleges deprivations that otherwise create an atypical or significant hardship on him. As such, Plaintiff had no cognizable liberty interests implicated as a result of

---

[69] *Thomas v. Jordan*, 2008 U.S. App. LEXIS 22033, 2008 WL 4649095, *1 (5th Cir. Oct. 21, 2008) (no constitutionally protected interest is implicated by prison officials' failure to classify inmate as a trusty, depriving him of opportunity to earn good time credits); *Walker v. Buentello*, 149 Fed. Appx. 286, 287, 2005 WL 2404748, *1 (5th Cir. Sept. 30, 2005) (prisoner has no constitutionally cognizable interest in trusty status); *Donaldson v. Ducote*, 112 Fed. Appx. 329, 331, 2004 WL 2320073, *2 (5th Cir. Oct. 12, 2004) (no constitutionally cognizable liberty interest in transfer from trusty status to working cellblock).
[70] *Jackson v. Cain,* 864 F.2d 1235,1247 (5th Cir. 1989).
[71] A prisoner has no justifiable expectation that he will be incarcerated in any particular prison within a state. *Olim v. Wakinekona,* 461 U.S. 238, 245-246 n. 6 (1983); *See also Hewitt v. Helms,* 459 U.S. 460, 467-468 (1983).
[72] *Id.*at 466-477*; See Wilkerson,* 774 F.3d at 855 (indicating that two and a half years as a rough "threshold" for atypicality); *Hernandez v.Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008)(finding that lockdown in a shared cell for a year with severe restrictions on the inamte's ability to leave the cell was not an atypical or significant hardship.)
[73] Louisiana Revised Statute §15:572(A); *See Olim,* 461 U.S. 238 at 249 ("a State creates a protected liberty interest by placing substantive limitations on official discretion."); *Jackson v. Cain,* 864 F.2d 1235, 1250 (5th Cir. 1989); *See also Luken v. Scott,* 71 F. 3d 192, 193 (5th Cir. 1995)(holding that the mere loss of an opportunity to earn good-time credits does not implicate due process.)

his disciplinary proceedings, and was not entitled to the protections of due process. For these reasons, Plaintiff's due process claims against the defendants should be dismissed.

### E. PROPERTY CLAIMS

Plaintiff alleges several times throughout his complaint that, upon his transfer to Hunt, he was deprived of large amounts of property that he accumulated while at LSP. To this end, however, Plaintiff has failed to state a claim for deprivation of property. It is well established that unauthorized negligent or even intentional wrongful deprivations of property by state employees does not amount to a violation of the procedural requirements of due process is a meaningful post-deprivation remedy for the loss is available.[74] The burden is on the complainant to show that available post-deprivation remedies are not adequate.[75] However, Louisiana law provides ample remedies under which a plaintiff can proceed to recover his property or to seek reimbursement for its loss.[76] Therefore, Plaintiff has failed to state a claim against the defendants for any loss of his property, and should be dismissed.

### F. INJUNCTIVE RELIEF

Plaintiff, in his Complaint, seeks injunctive relief against the defendants. Specifically, Plaintiff requests that the Court (1) enter an injunction requiring the Defendants, their agents, subordinates, employees and all others acting in concert with them to cease their unconstitutional and unlawful practices and to remedy their violations of the Constitutions and the laws; and (2) to enter an injunction requiring Defendants to restore to Plaintiff all rights and privileges he enjoyed prior to the retaliation. However, for the reasons below, Plaintiff's requests for injunctive relief fail as a matter of law, and should be dismissed.

---

[74] *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 517, 542 (1981).
[75] *Marshall v. Norwood,* 741 F.2d 761, 764 (5th Cir. 1984).
[76] *Id.* at 763.

## APPLICABLE LAW

In order to obtain an permanent injunction, a party is required to demonstrate that 1) that the party has suffered irreparable injury; 2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction.[77]

In the prison context, the PLRA provides in pertinent part that "prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."[78]

## ANALYSIS

Plaintiff has not alleged sufficient facts to show that he has suffered irreparable injury. As discussed in great detail above, Plaintiff has failed to demonstrate that he had a cognizable liberty interest in the actions taken against him. Specifically, Plaintiff does not have a cognizable liberty interest in his housing classification, his custodial status, the institution that he is housed in, or the investigation of his grievances and disciplinary appeals. Plaintiff has not alleged sufficient facts to show that any of the adverse actions he has suffered rose to the level of an atypical or significant hardship incident to ordinary prison life.

Plaintiff has further failed to demonstrate that he will continue to suffer irreparable injury. Plaintiff alleges that he was reclassified to medium custody in June 2016. Plaintiff makes no allegations that he has been placed back into administrative segregation or the working cellblocks since June 2016. Thus, to the extent that Plaintiff seeks injunctive relief in the form of not being housed in these areas, Plaintiff's claim fails because the mere possibility of a transfer

---

[77] *eBay, Inc., et al v. Merchexhange, L.L.C.,* 547 U.S. 388 (2006); *See also Weinberger v. Romero-Barcelo¸* 456 U.S. 305, 311-313 (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542 (1987).
[78] 18 USCS §3626(a)(1)(A).

back to a particular housing unit is too speculative to award relief.[79] Similarly, to the extent that Plaintiff requests this Court to order a transfer to Angola, or to reinstate the rights and privileges he enjoined prior to his transfer and disciplinary conviction, Plaintiff's claim is without merit, as he has not alleged sufficient facts to show that he has a cognizable interest in the relief requested.

Plaintiff's claims can also be satisfied by monetary compensation. A finding that the defendants violated his constitutional rights by retaliating against him or by denying him due process may be adequately addressed by an award of money damages. Additionally, to the extent that Plaintiff alleges his property was destroyed, monetary compensation may in fact be the *only* avenue for redress.

Plaintiff makes no allegations that he faces further harm from any of the alleged actions of the defendants, nor does he allege that he faces further harm if he exercises his constitutional rights.[80] Plaintiff certainly has not alleged the type of extraordinary circumstances that would justify this Court to "become enmeshed in the minutiae of prison operations."[81]

For the above reasons, Plaintiff's claim for injunctive relief should be dismissed.

### III. CONCLUSION

Plaintiff has failed to state a claim for retaliation against defendants James LeBlanc, Robert Tanner, Tim Hooper, Greg McKey, Stephen Waguespack, Shelia Robinson, Phyllis Wright, Becky Hill, Brandy Landry, Gregory Polozola, Walter Jarrell, and Jim Tillman under 42 U.S.C. §1983, and such claims should be dismissed. Additionally, Plaintiff has failed to state a sue process claim against the appearing defendants for due process, deprivation or property, or

---

[79] *See Herman v. Holiday,* 238 F.3d 660, 665 (5th Cir. 2001), *citing Bailey v. Southerland,* 821 F.2d 277, 279 (5th Cir. 1987)
[80] *See Geiger v. Jowers,* 404 F.3d 371, 375 (5th Cir. 2015); *See City of Los Angeles v. lyons,* 461 U.S. 95, 102 (1983).
[81] *See Lewis v. Casey ,* 518 U.S. 343, 362 (1996), *citing Bell v. Wolfish,* 441 U.S. 520, 562 (1979).

for injunctive relief under 42 U.S.C. §1983, and such claims should be dismissed. Therefore, the defendants' *Partial Motion to Dismiss* should be granted.

        Respectfully submitted,

        **JEFF LANDRY**
        **ATTORNEY GENERAL**

BY:   /s/ *James G. Evans*
        James "Gary" Evans (#35122)
        Assistant Attorney General
        **Louisiana Department of Justice**
        Litigation Division, Civil Rights Section
        1885 North Third Street, 4th Floor
        Post Office Box 94005 (70804-9005)
        Baton Rouge, Louisiana 70802
        Telephone:   225-326-6300
        Facsimile:    225-326-6495
        E-mail:       evansj@ag.louisiana.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 21st day of February, 2017, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system. Notice of this filing will be sent to all parties who participate in electronic filing by operation of the court's electronic filing system.

        /s/ *James G. Evans*
        James G. Evans